935 So.2d 1200 (2005)
STATE of Alabama
v.
Jameson Lamar HARGETT.
CR-03-1548.
Court of Criminal Appeals of Alabama.
February 25, 2005.
*1201 Troy King, atty. gen., and James B. Prude, asst. atty. gen., for appellant.
Thomas M. Goggans, Montgomery, for appellee.
SHAW, Judge.
The State of Alabama appeals from the trial court's order suppressing evidence of cocaine obtained after a traffic stop of an automobile being driven by Jameson Lamar Hargett.
At the suppression hearing, William Glenn Ware, who was a sergeant with the Lanett Police Department in 2002, testified that on November 27, 2002, a little before midnight, he saw a brown four-door vehicle, driven by Hargett, sitting at a stop sign. According to Sgt. Ware, he was to the left of the vehicle, and when the vehicle proceeded through the intersection in front of him, he noticed that Hargett was not wearing a seat belt. Sgt. Ware testified that the area where he first saw the vehicle was lit by streetlights, but that he saw the vehicle only for a matter of seconds. Sgt. Ware stated that Hargett was wearing a black jacket and a brown shirt, but he could not remember the color of the interior of the vehicle. Sgt. Ware testified that he pulled in behind the vehicle, and at that point he noticed that the front-seat passenger was also not wearing a seat belt. According to Sgt. Ware, he executed a traffic stop of the vehicle, and when he spoke with Hargett, he smelled the "odor of an alcoholic beverage coming from [Hargett's] person." (R. 5.) Sgt. Ware decided to run a check on Hargett's driver's license; because there were two other males in the vehicle and he was concerned for his safety, he asked Hargett to step out of the vehicle and to go back to Sgt. Ware's patrol car. After Hargett got out of his vehicle and he began to talk to Hargett, Sgt. Ware said, he noticed that Hargett was having difficulty talking because his mouth was full  specifically Sgt. Ware testified that Hargett had "something large" (R. 6) located "in his cheek." (R. 13.) Sgt. Ware testified on direct examination that because Hargett was having difficulty speaking, he "asked [Hargett] to open his mouth" and that when Hargett complied with that request, Sgt. *1202 Ware saw "several off-white rock substances in a clear plastic bag." (R. 6; emphasis added.) On cross-examination, however, Sgt. Ware testified, twice, that he "told [Hargett] to open his mouth." (R. 8; R. 14; emphasis added.) After seeing the cocaine in Hargett's mouth, Sgt. Ware told Hargett to spit out the bag, which Hargett did. At that point, Sgt. Ware said, Hargett attempted to run away, but he fell, at which point Sgt. Ware handcuffed and arrested Hargett. Sgt. Ware then field-tested the substance; it tested positive for cocaine. Hargett was subsequently indicted for the unlawful possession of a controlled substance, a violation of § 13A-12-212, Ala.Code 1975.
Hargett called his grandmother, Raycene Hargett, to testify on his behalf at the suppression hearing. Raycene testified that Hargett's car was a two-door car, not a four-door car as Sgt. Ware testified, and that the interior of the car was dark brown. Raycene also testified that the seat belt on the passenger side of the car was broken.
At the hearing on his motion to suppress, Hargett argued (1) that the initial stop of his vehicle was illegal, and (2) that, even if the stop was legal, the cocaine was found pursuant to an unconstitutional warrantless search of his person. In its written order granting Hargett's motion to suppress, the trial court stated:
"This matter coming before the Court for hearing on a Motion to Suppress filed by [Hargett] and the Court having received testimony and having heard argument from counsel and considering the same, said motion is hereby Granted as to all items seized as a result of the traffic stop of [Hargett] on November 28, 2002."
(C. 33.) The trial court made no findings of fact.
On appeal, the State argues that the stop of Hargett's vehicle was lawful because, it says, Sgt. Ware observed that the occupants of the vehicle were not wearing seat belts and that Sgt. Ware lawfully ordered Hargett to open his mouth so that he could see the object that was preventing Hargett from talking.[1] The State assumes that the trial court ruled on both suppression issues  the legality of the initial stop and the discovery of the cocaine in Hargett's mouth. On the other hand, Hargett argues that the sole basis for the trial court's suppression of the cocaine evidence was that the initial stop was invalid. According to Hargett, it is clear from the record that the trial court did not find Sgt. Ware's testimony  that he had stopped Hargett's vehicle because of a seat-belt violation  to be credible, and that such credibility choices by a trial court should not be disturbed on appeal. Based on the record before us, we cannot determine the basis for the trial court's suppression of the cocaine.
The trial court could have determined that Sgt. Ware's testimony that he stopped Hargett's vehicle after he saw that the occupants in the car were not wearing seat belts was not credible and discounted it. Indeed, there is some suggestion in the record that the court did just that. The *1203 court questioned Sgt. Ware extensively about how far away he was from Hargett's vehicle when he saw that Hargett was not wearing a seat belt; how long he had observed the vehicle before concluding that Hargett was not wearing a seat belt; what color clothing Hargett was wearing; and what color the seat belts in the car were. However, the court then made the following comment:
"Well, I think the stop is always going to be subjective. I mean, are you saying illegal stop? I don't know. I wasn't there. I don't know what he saw or what. Certainly, it's suspicious from that length that he sees no seat belts. I can't say that he didn't because I wasn't there. I don't know whether he did or not. He's testified under oath that he did, in fact, see no seat belts on two of the people and saw none of the three had them on when he finally got them stopped. I'm assuming that his seconds of vision of these seat belts when they crossed was the basis for him following these folks. You know, I mean, I'm not there to say. I will say it's highly suspicious, but I can't say that it didn't happen. I don't know that you can either."
(R. 28.)
It is equally plausible that the trial court credited Sgt. Ware's testimony regarding the stop and found the stop to be valid but determined that the discovery of the cocaine was the result of an unconstitutional warrantless search of Hargett's mouth. There is some indication in the record that that may have been the case. During a lengthy discussion on that issue, the trial court indicated that it believed Sgt. Ware's testimony on cross-examination that he ordered Hargett to open his mouth, as opposed to his testimony on direct examination that he asked Hargett to open his mouth; that it believed Sgt. Ware's order was the equivalent of a warrantless search that was not consensual; and that it seriously questioned the basis for such a search.
Because we cannot determine from the record the basis of the trial court's suppression of the cocaine, we cannot properly review the trial court's decision. In reviewing a trial court's ruling on a motion to suppress, this Court reviews the trial court's findings of fact under an abuse-of-discretion standard of review. "When evidence is presented ore tenus to the trial court, the court's findings of fact based on that evidence are presumed to be correct," Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994); "[w]e indulge a presumption that the trial court properly ruled on the weight and probative force of the evidence," Bradley v. State, 494 So.2d 750, 761 (Ala.Crim.App.1985), aff'd, 494 So.2d 772 (Ala.1986); and we make "`all the reasonable inferences and credibility choices supportive of the decision of the trial court.'" Kennedy v. State, 640 So.2d 22, 26 (Ala.Crim.App.1993), quoting Bradley, 494 So.2d at 761. "[A]ny conflicts in the testimony or credibility of witnesses during a suppression hearing is a matter for resolution by the trial court.... Absent a gross abuse of discretion, a trial court's resolution of [such] conflict[s] should not be reversed on appeal." Sheely v. State, 629 So.2d 23, 29 (Ala.Crim.App. 1993) (citations omitted). However, "`[w]here the evidence before the trial court was undisputed the ore tenus rule is inapplicable, and the [appellate] Court will sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court's application of the law to those facts.'" State v. Hill, 690 So.2d 1201, 1203 (Ala.1996), quoting Stiles v. Brown, 380 So.2d 792, 794 (Ala.1980). "`"[W]hen the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court's judgment."'" Ex *1204 parte Jackson, 886 So.2d 155, 159 (Ala. 2004), quoting Hill, 690 So.2d at 1203, quoting in turn Ex parte Agee, 669 So.2d 102, 104 (Ala.1995). A trial court's ultimate legal conclusion on a motion to suppress based on a given set of facts is a question of law that is reviewed de novo on appeal. See State v. Smith, 785 So.2d 1169 (Ala.Crim.App.2000).
The State argues that this Court should review the trial court's ruling in this case de novo because, it says, the evidence at the suppression hearing was, in all material respects, undisputed, and the only question in this case is whether the trial court misapplied the law to the facts. We disagree. With respect to the legality of the initial stop, Sgt. Ware's testimony that he saw that Hargett was not wearing a seat belt was not directly disputed; however, Sgt. Ware's ability to see whether Hargett was wearing a seatbelt, given the circumstances  it was dark, the defendant was wearing dark-colored clothing, and the interior of the car was a dark color  was hotly disputed and could only be resolved by making a credibility choice. Although typically this Court would resolve this credibility choice in favor of the trial court's ruling, we cannot do so in this case because, as noted above, we do not know whether the trial court suppressed the evidence because it found the stop to be invalid or whether it found the stop to be valid and suppressed the evidence because it found that the discovery of the cocaine resulted from an unconstitutional warrantless search.
Likewise, with respect to the discovery of the cocaine, although Sgt. Ware was the only witness to testify regarding the circumstances of the stop, his testimony was internally inconsistent on a key fact  whether he asked Hargett to open his mouth and Hargett consented or whether he ordered Hargett to open his mouth and Hargett complied. This key fact dictates our review of this issue. If the trial court determined that Sgt. Ware asked Hargett to open his mouth and Hargett complied, the proper inquiry is the voluntariness of Hargett's consent.[2] On the other hand, if Sgt. Ware ordered Hargett to open his mouth, the proper inquiry is whether such an order violated the Fourth Amendment's proscription against unreasonable searches and seizures. We decline, at this time, to express any opinion with respect to these inquiries, because we cannot, based on the record, determine which inquiry is appropriate. Indeed, we do not even know, at this time, whether either inquiry will be necessary because if the trial court determined that Sgt. Ware's testimony regarding the initial stop of Hargett's vehicle was not credible and suppressed the evidence on the basis that the stop was invalid, inquiry into the discovery of the cocaine would be unnecessary.
We recognize that "the trial court is not required by any rule or statute to set forth findings of fact in an order denying or granting a motion to suppress." Smith, 785 So.2d at 1173. However, given the unique circumstances in this case, we are unable to properly review the trial court's ruling and, thus, we must remand this case for the trial court to clarify the basis for its suppression of the cocaine and to issue specific written findings of fact and conclusions of law regarding its determination of (1) the validity of the initial stop of Hargett's vehicle, and (2) the legality of the discovery and seizure of the cocaine in Hargett's mouth. Due return shall be filed with this Court within 35 days of the date of this opinion.
*1205 REMANDED WITH DIRECTIONS.[*]
McMILLAN, P.J., and BASCHAB and WISE, JJ., concur. COBB, J., dissents, with opinion.
COBB, Judge, dissenting.
The trial court in this case granted Hargett's motion to suppress. The majority holds that the case must be remanded for the trial court to make specific written findings of fact and conclusions of law and to clarify the basis for its ruling. I disagree; the record contains sufficient support for the trial court's ruling. The order granting the motion to suppress should be affirmed.
The majority sets out much of the relevant caselaw, noting that when evidence is presented to the trial court ore tenus, the court's findings of fact are presumed correct and we make all reasonable inferences supportive of the trial court's ruling. I agree with the majority's determination that the testimony of the sole witness was internally inconsistent and that the trial court's determination regarding the legality of stop required the court to make a credibility choice. The majority then notes that this Court would typically resolve credibility choices in favor of the trial court as to the issue of the legality of the stop, but holds that it cannot do so in this case because it is unclear whether the trial court suppressed the evidence because the stop was invalid or because the search was illegal.
As the majority notes, no rule or statute requires trial courts to set forth fact findings when ruling on a motion to suppress. In fact, trial courts routinely rule on motions to suppress without making any specific findings of fact. For example, in Eggers v. State, 914 So.2d 883, 900 (Ala.Crim. App.2004), we stated:
"Although the trial court did not issue any findings of fact when denying Eggers's motion to suppress and, thus, we do not know the reason for the trial court's ruling, it would not have been an abuse of discretion for the trial court to find, based on the above testimony of Agent Maldonado, that Eggers did not invoke his right to counsel while in the patrol car."
In State v. Mitchell, 722 So.2d 814, 822 (Ala.Crim.App.1998), we stated:
"Although the trial court did not make specific findings of fact in support of its decision to grant the motion to suppress, we can infer from the record that the motion was granted because of the discrepancy between the testimony of Officer Tilley and the information contained in his report and the affidavit prepared by Investigator Greene regarding where the cocaine was located at the time of the search."
In Kaercher v. State, 554 So.2d 1143, 1150 (Ala.Crim.App.1989), we stated:
"If the trial court makes findings of fact, which is the better practice, the appellate court is required to accept them unless they are clearly erroneous. United States v. Gunn, 428 F.2d 1057 (5th Cir.1970); Simmons v. State, 428 So.2d 218 (Ala.Cr.App.1983). However, if findings are not made, as in the case here, the appellate court will uphold the ruling of the trial court if there is any reasonable view of the evidence in the record to support the ruling. United States v. Montos, 421 F.2d 215 (5th Cir. 1970); People v. Massiah, 47 A.D.2d 931, 367 N.Y.S.2d 73 (1975); Green v. *1206 Commonwealth, 223 Va. 706, 292 S.E.2d 605 (1982); 4 W. LaFave, [Search and Seizure] § 11.2(e) [(2d ed.1987)]; 1 W. Ringel, Searches & Seizures, Arrests and Confessions § 20.6 (1988). We recognize that appellate courts often remand cases for findings of fact when they cannot determine from the record the basis of the trial court's decision. See, e.g., United States v. Greely, 425 F.2d 592 (D.C.Cir.1970); People v. Burke, 60 A.D.2d 959, 401 N.Y.S.2d 887 (1978). However, here, even though we have been critical of the manner in which this issue has been presented, we find the record sufficient for us to properly review the ruling of the trial court. We note that, in the instant case, there is no conflict in the evidence. This case is not one of those cases where a defendant failed, or was denied the opportunity, to present evidence at the trial level on important issues. See, e.g., Combs v. United States, 408 U.S. 224 (1972); United States v. Hansen, 652 F.2d 1374 (10th Cir.1981)."
This case is no different from the foregoing cases, and the ruling on the motion to suppress can be, and should be, reviewed. Appellate review is not hampered here by the court's failure to enter written findings. "If the trial court's ruling on a suppression motion is correct for any reason it should not be reversed. Loggins v. State, 771 So.2d 1070, 1078 (Ala.Crim.App. 1999), aff'd, 771 So.2d 1093 (Ala.2000)." State v. Strong, 886 So.2d 900, 900 (Ala. Crim.App.2004)(Shaw, J., concurring in the result, joined by Cobb, J.). In fact, I believe that a remand here gives the State "another bite at the apple" when, in fact, review of the proceedings now supports an affirmance.
"We note that the trial judge, as the finder of fact, determined the credibility of the witnesses. The trial court's determination regarding credibility of witnesses is entitled to great weight on appeal. Calhoun v. State, 460 So.2d 268 (Ala.Crim. App.198[4])." Dixon v. State, 588 So.2d 903, 907 (Ala.1991). "Even where the matter rests upon the testimony of only one witness, the trier of fact is free to accept or reject the witness's statements. Where inferences to be drawn from the evidence are susceptible to more than one rational conclusion, the decision is for the factfinder." State v. Ivey, 709 So.2d 502, 505 (Ala.Crim.App.1997).
The record before us indicates that the trial court questioned the credibility and veracity of Officer Ware. The court stated, "I'm trying to figure out whether this is a real matter or whether it was a pretext to a search to start off with. That's my concern. You know, 11 o'clock at night you see seat belts from six car lengths away, or lack of." (R. 25.) The court later stated that the stop was "highly suspicious" based on the distance between the officer and Hargett, but acknowledged that the officer testified under oath that he had observed that Hargett was not wearing a seat belt. (R. 28.) The court and the parties also discussed whether Hargett voluntarily spit out the plastic bag or whether he had been ordered to do so. The court then took the matter under consideration and later entered a written order granting the motion to suppress.
Clearly, the trial court did not believe that the officer was testifying truthfully, and that was a credibility question for the trial court to make. Giving due deference to the trial court's determination of credibility, I would uphold the trial court's ruling on the motion to suppress. Based on the officer's questionable testimony, the trial court could have correctly determined *1207 that the stop and search were illegal. Accordingly, I dissent.
NOTES
[1] In this regard, the State specifically argues (1) that when Sgt. Ware noticed that Hargett was unable to talk because of a large object in his mouth, he had "either reasonable suspicion or probable cause to believe that Hargett possessed evidence of crime or a weapon" which justified ordering Hargett to open his mouth (State's brief at p. 11); (2) that the discovery of the cocaine could be considered a search incident to a lawful arrest because, according to the State, Sgt. Ware had probable cause to arrest Hargett for driving under the influence of alcohol; and (3) that the discovery of the cocaine was based on probable cause plus exigent circumstances.
[2] Although the State does not argue consent on appeal, see note 1, supra, consent was the State's sole argument at the suppression hearing.
[*] Note from the reporter of decisions: On April 1, 2005, on return to remand, the Court of Criminal Appeals affirmed, without opinion.